## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA L. VARGAS** | : | **Civil No.  1:19-CV-1492** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security[1]** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has recently underscored for us the limited scope of our

review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Commissioner
of Social Security, Andrew Saul, is automatically substituted as the defendant in
place of the former Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff, Brenda Vargas applied for supplemental security income under Title XVI of the Social Security Act on July 25, 2016, alleging disability due to asthma, depression, anxiety, fibromyalgia, irritable bowel syndrome (IBS), obese class 1, scoliosis/osteoarthritis, panic attacks, carpal tunnel, high blood pressure, and attention deficit disorder (ADD). (Tr. 179). However, after consideration of the medical records and opinion evidence, including the objective diagnostic tests and clinical findings on Vargas' physical and mental examinations, Vargas's longitudinal treatment history, and her documented activities of daily living, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Vargas could perform a limited range of light work and denied her disability application.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's

findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On July 25, 2016, Brenda Vargas applied for supplemental security income pursuant to Title XVI of the Social Security Act, alleging an onset date of disability beginning July 3, 2015 due to asthma, depression, anxiety, fibromyalgia, IBS, obese class 1, scoliosis/osteoarthritis, panic attacks, carpal tunnel, high blood pressure, and ADD. (Tr. 21, 179). Vargas was a younger worker, approximately 37 years old at the time of the alleged onset of her disability. (Tr. 57). Vargas speaks limited English and her primary language is Spanish. (Tr. 290). Vargas has a high school education in a regular educational curriculum with some extra learning help. (Tr. 290). Vargas also completed two years of college at Metropolitan University at Jayuya in Puerto Rico. (Tr. 42, 290). Prior to the alleged onset date of her disability, Vargas served as a packer at a warehouse and a cashier at a bakery and supermarket. (Tr. 169).

The medical record in this case is mixed and equivocal but contains substantial evidence which indicates that Vargas retained the capacity to perform some work. Specifically, Vargas has a long history of severe physical impairments, as her medical records indicate she experiences symptoms of bilateral wrist and hand pain, numbness in her hands and legs, lower back pain, bilateral leg pain, bilateral knee

3

pain, bilateral foot pain, and diffuse musculoskeletal pain. (Tr. 29). Vargas also has a long history of mental health conditions, as her medical records indicate that Vargas experiences difficulty sleeping, dysphoric moods, crying spells, loss of usual interests, concentration difficulties, diminished sense of pleasure, excessive apprehension and worry, difficulty concentrating, panic attacks, short-term memory deficits, organizational and abstracting difficulties, and disorientation to person, place, and time. (Tr. 29).

On this score, Vargas' treatment history discloses that Vargas underwent diagnostic testing pertaining to her lumbar spine, thoracic spine and lower extremities, which demonstrated abnormal findings. (Tr. 29). Specifically, the medical record demonstrates that Vargas was assessed with clinical examination findings of an antalgic gait, limited range of motion of the lumbar spine, tenderness of the wrists, a positive Tinel's sign of the carpal tunnel bilaterally, a positive carpal tunnel compression test bilaterally, tenderness of the knees, tenderness of the trapezius muscles, trochanteric region, subacromial region, gluteal region and wrists. (Id.).

In September 2015, Vargas was seen at Penn State Medical Center to undergo electrodiagnostic testing for carpal tunnel syndrome, polyneuropathy, and radiculopathy. (Tr. 918). The test results revealed mild to moderate bilateral carpal

tunnel syndrome. (Tr. 922). In October 2017, Vargas was examined by Dr. Narendra V. Dhaduk concerning numbness of her legs and associated back pain. (Tr. 653-54). Electrodiagnostic testing, however, revealed only mild chronic bilateral S1 lumbosacral radiculopathy and no evidence of motor polyneuropathy of demyelinating type. (Tr. 653). In October 2017, Vargas visited WellSpan Health for a follow-up examination for some blood work to evaluate the possibility of rheumatologic disease, particularly regarding Vargas' bilateral knee pain. (Tr. 666). Upon examination, however, the examining physician noted only mild tenderness along the medial joint line of both knees with the right being slightly worse than the left; no tenderness in the calf or ankle; symmetric deep tendon reflexes at the quadriceps and Achilles; symmetric range of motion at the hips, knees, and ankles; and normal limits within her upper extremities with deep symmetric deep tendon reflexes in the biceps, triceps, and brachioradialis. (Id.).

In January 2017, Vargas was examined by State agency consultant, Michael Brown. (Tr. 63-65). Dr. Brown opined that Vargas could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, could stand and/or walk for approximately six hours in an eight-hour workday, and could sit for approximately six hours in an eight-hour workday. (Tr. 63). With regard to her postural limitations, Dr. Brown opined that Vargas could occasionally climb ramps, stairs, ladders, ropes

and scaffolds; and that she could occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 64).

In December 2017, Vargas visited NeuroScience and Spine Associates. (Tr. 751-53). Despite findings of moderate limitation to the lumbar range of motion, the neurological examination revealed mostly normal findings, including a normal gait, normal bulk and tone in all extremities, and 5/5 motor exam throughout. (Tr. 752.). To treat her physical impairments, the medical records indicate that Vargas was prescribed pain medication, wore wrist splints, underwent cortisone injections in her back to manage pain, and received physical therapy treatment. It was reported that Vargas experienced some improvements in her physical condition as a result of this treatment. (Tr. 29, 205, 260, 262).

As for her mental health impairments, in May 2016, Vargas was examined by State agency psychological examiner, Dr. David Baker, who completed a medical source statement. (Tr. 290-94). Upon examination, Dr. Baker examined Vargas' in the following two areas: (1) her ability to understand, remember, and carry out instructions; and (2) her ability to interact with supervisions, co-workers, and the public, as well as respond to changes in the routine work setting. (Tr. 295-96). Upon examination, Dr. Baker opined that Vargas had mild limitations in understanding and remembering simple instructions, mild limitations in carrying out simple

instructions, and mild limitations in her ability to make judgements on simple work-related decisions. (Tr. 295). Dr. Baker further opined that Vargas had moderate limitations in her ability to understand and remember complex instructions and carry out complex instructions and marked limitations in her ability to make judgements on complex work-related decisions. (Id.).  In the second area, Dr. Baker opined that Vargas had moderate limitations in her ability to interact appropriately with the public, moderate limitations in her ability to interact appropriately with supervisor(s), and interact appropriately with co-workers, and had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 296).

In December 2016, Dr. Richard Small completed a Mental Residual Functional Capacity Assessment. (Tr. 65-67). In the assessment, Dr. Small examined Vargas under the following categories: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Tr. 65). Dr. Small concluded that Vargas had no limitations in the category of understanding and memory limitations. (Id.). In the category of sustained concentration and persistence, Dr. Small concluded that Vargas had moderate limitations in her ability to maintain attention and concentration for extended periods, and no significant limitations in her ability to carry out very short and simple instructions, no significant limitations

in her ability to carry out detailed instructions, and no significant limitations in her ability to perform activities within a schedule. (Tr. 65-66). Dr. Small further concluded that Vargas had no significant limitations in her ability to maintain regular attendance, no significant limitations in her ability to be punctual within customary tolerances, no significant limitations in her ability to sustain an ordinary routine without special supervision, no significant limitations in her ability to work in coordination with or in proximity to others without being distracted by them, and no significant limitations in her ability to make simple work-related decisions. (Tr. 65-66).

In the category of social interaction, Dr. Small concluded that Vargas had moderate limitations in her ability to interact appropriately with the general public and no significant limitations in her ability to ask simple questions or request assistance, no significant limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, no significant limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and no significant limitations in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 66). In the category of adaptation, Dr. Small concluded that Vargas had moderate limitations in her ability to respond appropriately to changes in the work

8

setting, no significant limitations in her ability to be aware of normal hazards and take appropriate precautions, no significant limitations in her ability to travel in unfamiliar places or use public transportation, and no significant limitations in her ability to set realistic goals or make plans independently of others. (Id.).

While doctors Baker and Small described these limited abnormal mental status findings, the longitudinal mental status examinations performed by Vargas' treating psychiatrist, Dr. Anne Dall from July 2016 to March 2018, revealed relatively normal mental status findings, including normal concentration, intact thought association, logical thought process, good insight and judgement, intact recent and remote memory, normal speech, cooperative attitude, appropriate manner, and no suicidal or homicidal ideation. (Tr. 1572, 1574-75, 1577-78, 1582-83, 1587-88, 1590-91, 1595-96, 1598-99, 1601-02).

Vargas applied for disability benefits on July 25, 2016, and her application for benefits was denied on January 10, 2017. (Tr. 21). Thereafter, Vargas filed a written request for a hearing on March 6, 2017, and a hearing was held on April 4, 2018. (Id.). At the hearing both Vargas, represented by counsel, and a Vocational Expert testified. (Id.). Vargas, however, testified with the assistance of a Spanish interpreter. (Id.). By a decision dated September 5, 2018, the ALJ denied Vargas' application for benefits. (Tr. 15).

In that decision, the ALJ first concluded that Vargas had not engaged in substantial gainful activity since July 25, 2016—the application date. At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Vargas suffered from the following severe impairments: carpal tunnel syndrome, degenerative disc disease, synovitis of the knees, fibromyalgia, obesity, ADHD, mild cognitive impairment, major depressive disorder, and panic disorder. (Tr. 23). At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 24).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Vargas' limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work defined in 20 C.F.R. 416.967(b). She is limited to no more than occasional postural movements and no more than frequent handling and fingering bilaterally. Work is limited to simple and routine tasks involving only simple work-related decisions with few, if any, work place changes and only occasional interaction with supervisors, co-workers, and the public.

(Tr. 27).

In making the RFC determination, the ALJ accorded great weight to the opinion of Dr. Brown, State agency consultant. (Tr. 31). Dr. Brown opined that Vargas could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, could stand and/or walk for approximately six hours in an eight-hour

workday, and could sit for approximately six hours in an eight-hour workday. (Tr. 63). With regard to her postural limitations, Dr. Brown opined that Vargas could occasionally climb ramps, stairs, ladders, ropes and scaffolds; and that she could occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 64). The ALJ assigned great weight to Dr. Brown's opinion, concluding that his opinion matched Vargas' medical records on a longitudinal basis, including clinical examination findings of a normal gait, normal balance, normal coordination, 5/5 strength in the upper and lower extremities, a negative straight leg raising test, no tenderness of the hands or wrists, satisfactory range of motion of the shoulders, hips, knees, ankles, elbows, and wrists, good grip strength, normal tandem walking, normal muscle bulk and tone, and a negative Romberg test. (Tr. 31). Additionally, the ALJ explained that Dr. Brown's findings corresponded to a December 2017, neurological examination, which revealed mostly normal findings. (Id.). For example, the neurological examine demonstrated that Vargas had a normal gait, a normal bulk and tone in all extremities, and 5/5 motor exam throughout. (Id.). Moreover, the ALJ explained that the neurological examine revealed that Vargas experienced moderate limitations in the lumbar range of motion, which corresponded to the moderate limitations opined by Dr. Brown. (Id.). The ALJ further explained that electrodiagnostic testing in October 2017, revealed only mild radiculopathy supporting the moderate limitations

opined by Dr. Brown and that an orthopedic examination noted that Vargas' knee impairment was mild and that Vargas "seems to be functioning fairly well." (Id.). Thus, the ALJ assigned great weight to Dr. Brown's opinion.

The ALJ assigned little weight to the opinion of Dr. Small. (Id.). Dr. Small completed a Mental Residual Functional Capacity Assessment and examined Vargas under the following categories: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Tr. 65). Upon examination, Dr. Small concluded that Vargas had no limitations in the category of understanding and memory limitations. (Id.). In the category of sustained concentration and persistence, Dr. Small concluded that Vargas had moderate limitations in her ability to maintain attention and concentration for extended periods, no significant limitations in her ability to carry out very short and simple instructions, no significant limitations in her ability to carry out detailed instructions, and no significant limitations in her ability to perform activities within a schedule. (Tr. 65-66). Dr. Small further concluded that Vargas had no significant limitations in her ability to maintain regular attendance, no significant limitations in her ability to be punctual within customary tolerances, no significant limitations in her ability to sustain an ordinary routine without special supervision, no significant limitations in her ability to work in coordination with or in proximity to others without being

12

distracted by them, and no significant limitations in her ability to make simple work-related decisions. (Tr. 65-66). In the category of social interaction, Dr. Small concluded that Vargas had moderate limitations in her ability to interact appropriately with the general public and no significant limitations in her ability to ask simple questions or request assistance, no significant limitations in her ability to accept instructions and respond appropriately to criticism from supervisors, no significant limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and no significant limitations in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 66). In the category of adaptation, Dr. Small concluded that Vargas had moderate limitations in her ability to respond appropriately to changes in the work setting, no significant limitations in her ability to be aware of normal hazards and take appropriate precautions, no significant limitations in her ability to travel in unfamiliar places or use public transportation, and no significant limitations in her ability to set realistic goals or make plans independently of others. (Id.).

The ALJ assigned little weight to Dr. Small's opinion, finding that the moderate limitations opined by Dr. Small did not correspond to the mental health treatment records, including mental status examinations performed by the treating

psychiatrist, Dr. Anne Dall from July 2016 to March 2018. (Id.). The ALJ reasoned

that the mental status examination findings performed by treating psychiatrist, Dr.

Anne Dall revealed mostly normal findings, supporting no more than moderate

limitations. (Id.). The ALJ further explained that Vargas' mental health treatment

had been conservative without a higher level of care, such as inpatient or day

hospital. (Id.). Thus, the ALJ assigned little weight to Dr. Small's opinion.

The ALJ assigned some weight to the opinion of Dr. Baker, State agency

consultative psychological examiner. (Id.). Dr. Baker examined Vargas' mental

impairments in the following two areas: (1) her ability to understand, remember, and

carry out instructions; and (2) her ability to interact with supervisions, co-workers,

and the public, as well as respond to changes in the routine work setting. (Tr. 295-

96). Upon examination, Dr. Baker opined that Vargas had mild limitations in

understanding and remembering simple instructions, carrying out simple

instructions, and her ability to make judgements on simple work-related decisions.

(Tr. 295). Dr. Baker further opined that Vargas had moderate limitations in her

ability to understand and remember complex instructions and carry out complex

instructions; and marked limitations in her ability to make judgements on complex

work-related decisions. (Id.).  In the second area, Dr. Baker opined that Vargas had

moderate limitations in her ability to interact appropriately with the public, moderate

14

limitations in her ability to interact appropriately with supervisor(s), and interact appropriately with co-workers, and had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 296).

The ALJ assigned some weight to Dr. Baker's opinion. (Tr. 31). Specifically, the ALJ reasoned that Dr. Baker opined limitations supporting the moderate limitations of the RFC. (Tr. 31). The ALJ, however, assigned little weight to one aspect of Dr. Baker's opinion, his finding of marked limitations in the area of "respond appropriately to usual work situations and to changes in a routine work setting." (Id.). The ALJ reasoned that such a marked limitation did not correspond to the mental status examinations performed by treating psychiatrist, Dr. Anne Dall, which revealed mostly normal findings supporting no more than moderate limitations. (Id.). The ALJ further explained that Vargas' conservative treatment without higher level of care, such as inpatient or day hospital did not support a marked limitation in the area of "respond appropriately to usual work situations and to changes in a routine work setting." Additionally, the ALJ explained that Dr. Baker's opinion of marked limitations in "the ability to make judgements on complex work-related decisions" did not contradict the RFC because the RFC described a range of unskilled work. (Id.).

Having arrived at this RFC assessment for Vargas based upon a careful evaluation of these various medical opinions, many of which supported a conclusion that Vargas could work, the ALJ found at Step 5 that, while Vargas could not return to her prior occupations, there were other jobs performed at the light exertional level in the national economy which she could perform. (Tr. 32). Accordingly, the ALJ concluded that Vargas did not meet the stringent standard for disability set by the Act and denied her disability claim. (Id.).

This appeal followed. (Doc. 1). On appeal, Vargas contends that the ALJ's decision is not based on substantial evidence required under 42 U.S.C. § 405(g). This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth, under the deferential standard of review that applies here, the Commissioner's final decision is affirmed.

## III.   Discussion

### A.      Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the

agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

18

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

19

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

21

opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay

22

assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   **Legal Benchmarks for the ALJ's Assessment of Medical Opinion and Lay Evidence**

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. <u>See</u> 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some

25

circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the

ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. Therefore, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"

27

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at

1066). Therefore, provided that the decision is accompanied by an adequate,

articulated rationale, it is the province and the duty of the ALJ to choose which

medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When

evaluating lay testimony regarding a claimant's reported degree of disability, we are

reminded that:

> [T]he ALJ must necessarily make certain credibility determinations,
> and this Court defers to the ALJ's assessment of credibility. See Diaz v.
> Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether
> there is substantial evidence to support an administrative law judge's
> decision, we owe deference to his evaluation of the evidence [and]
> assessment of the credibility of witnesses...."). However, the ALJ must
> specifically identify and explain what evidence he found not credible
> and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d

Cir. 1994) (citing <u>Stewart v. Sec'y of Health, Education and Welfare</u>, 714 F.2d 287, 290 (3d Cir. 1983)); <u>see also Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D. Pa. 2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 1979); accord <u>Snedeker v. Comm'r of Soc. Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." <u>Chandler</u>, 667 F.3d at 363 (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." <u>Hantraft v. Apfel</u>, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR

16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has

received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

## D.   The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Judged against these deferential

standards of review, we find that substantial evidence supported the decision by the ALJ that Vargas could perform a limited range of light work and was not disabled.

### 1. <u>Substantial Evidence Supports the ALJ's RFC Assessment</u>

Vargas' arguments on appeal largely concern the ALJ's RFC assessment between Steps 3 and 4 of the sequential analysis. The determination of an individual's RFC falls solely within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). RFC means "that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" <u>Burnett v. Commissioner of Social Sec. Admin.</u>, 220 F.3d 112, at 121 (3d Dept 2000) (quoting <u>Hartranft v. Apfel</u>, 181 F.3d 358, 359(3d Cir. 1999)). It reflects the *most* that an individual can still do, despite his or her limitations, and is used at Steps 4 and 5 to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." <u>Black v. Berryhill</u>, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); <u>see</u> <u>also</u> <u>Martin v. Comm'r of Soc. Sec.</u>, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." Burnett, 220 F.3d at 121 (internal citations omitted); see 20 C.F.R. § 404.1527(c); see also SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'"). Under the regulations, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgements about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. Plummer, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting Mason, 994 F.2d at 1066)).

34

Applying the above standard to the present record, the Court finds substantial

evidence to support the ALJ's RFC determination.

### i.     The ALJ Accounted for Vargas' Severe Impairments in the RFC Assessment

Vargas first argues that the ALJ failed to properly account for all of her severe

impairments in crafting the RFC. (Doc. 11 p. 12-18). A severe impairment is defined

as an "impairment or combination of impairments which significantly limits" the

claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §

404.1520(c). Specifically, Vargas argues that the ALJ provides exertional and non-

exertional limitations that are insufficient in addressing her physical and mental

impairments, including her carpal tunnel syndrome, degenerative disc disease,

synovitis of the knees, fibromyalgia, obesity, ADHD, mild cognitive impairment,

major depressive disorder, and panic disorder. (Doc. 11 p. 15-18). With regard to

her mental impairments, Vargas argues that the ALJ failed to consider several of the

documented and diagnosed issues regarding her mental health, including:

> [How] her frequent-daily panic attacks, which occurred at her last job,
> would impact her ability to work, (2) how her mental-health
> impairments, causing panic attacks, issues with memory and
> concentration, and he[r] being tired all day, would impact her ability to
> remain on task, (3) how the marked limitation noted by the CE,
> regarding Claimant's ability to adjust to changes in the routine work
> setting, would impact her need for unscheduled breaks and ability to
> remain on task, and (4) how Claimant's need to leave work early, or
> perhaps not attending work at all, due to panic attacks and

psychologically based issues (including her isolation) would impact her rate of absenteeism. In particular, Claimant's mental-health records confirm ongoing issues with panic attacks, depression, neurological issues, including loss of memory and lack o concentration, for which she has treated at Neurology and Stroke Associates, as well as: (1) appetite changes, (2) sleep disturbance, (3) lack of motivation, (4) irritability, (5) changes in energy, (6) the aforementioned daily panic attacks (some of which she has gone to the Emergency Room for), (7) anxiety, (8) crying almost daily (9) impaired interest and motivation, (10) thoughts that life is not worth living, (11) poor concentration, which is worsening, (12) hypomanic symptoms lasting one day or so at a time, (13) difficulty with memory, focusing and organizing, (14) anhedonia, (15) fights with her family, (16) forgetting a lot of things, and (17) decline in metal status over the course of a year, with easy distractibility, issues with memory and increased depression. (Admin Tr. 493, 497, 528, 558, 600, 690-91, 726-27, 752, 786, 797-98, 823-26, 831-32, 996-97, 1086-90, an 1451-55).

(Doc. 11 p. 15). Vargas argues that the "the ALJ only focused on specific records, which showed less significant limitations, without considering the record as a whole, which . . . indicate[ed] more significant limitations that should have been included in [her] RFC." (Id.).

As for her physical impairments, Vargas argues that the ALJ failed to fully consider the limitations from her multiple physical health related issues, including:

(1)[H]er back pain, from a prior work-related injury, came back when she tried to return to work, (2) she has already undergone back surgery and physical therapy, which were unsuccessful in alleviating her back pain, (3) her back pain is triggered by activity, (4) flare-ups in her fibromyalgia, (5) tingling sensation in both arms, (6) pain and swelling in her hands, worse in the morning, worse in the cold, and worse with activity, (7) pain her arms, right worse than left, (8) pain in both knees with associated trouble walking, (9) an EMG study which confirmed

36

neuropathy in both wrists, with the right side being significantly worse, (10) multiple series of injections and radio-frequency ablations in her back, which have not helped with her pain, (11) objective notations of pain with facet joint loading (Admin. Tr. 472), (12) bilateral knee pain, (13) fibromyalgia pain in her shoulder, neck girdle and back, and (14) she has pain and swelling in her lower back. (Admin Tr. 255, 355-57, 376-78, 391, 410-15, 429, 439, 441, 443-45, 456-75, 664-68, 687-88, and 987-88).

(Doc. 11 p. 17). Vargas further contends that the ALJ offered no limitations concerning her pinched nerve in one of her legs, despite record evidence documenting the abnormal findings and that the ALJ failed to properly analyze her fibromyalgia pursuant to SSR 12-2p.

In response, the Commissioner argues that the ALJ fully accounted for all of Vargas' functional limitations that were credibly established by the evidence. (Doc. 12 p. 4). The Commissioner asserts that in the RFC, the ALJ incorporated the following limitations:

[L]ifting or carrying no more than 20 pounds frequently; lifting or carrying no more than [ten] pounds occasionally; no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no more than frequent handling and fingering bilaterally; performing only simple and routine tasks involving only simple work related decisions with few, if any, workplace changes; and only occasional interaction with supervisors, co-workers, and the public.

(Doc. 12 p. 4-5). The Commissioner further contends that no "credible evidence" demonstrates that Vargas' had greater functional limitations during the relevant period and that Vargas failed to provide any evidentiary support demonstrating the

need for additional limitations in the RFC. (Doc. 12 p. 5, 12).

As mentioned <u>supra</u>, the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. <u>Chandler</u>, 667 F.3d at 361. As correctly asserted by Vargas, "a hypothetical question posed to the vocational expert must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [vocational] expert's answer to it cannot be considered substantial evidence." <u>Chrupcala</u>, 829 F.2d at 1276; <u>see also</u> <u>Rutherford</u>, 399 F.3d at 554; <u>Ramirez</u>, 372 F.3d at 552-55; <u>Podedworny</u>, 745 F.2d at 218. It is longstanding precedent, however, that in crafting the RFC, the ALJ is not required to include every impairment alleged by the claimant. <u>Rutherford</u>, 399 F.3d at 554. The ALJ is only required to include all of a claimant's "credibly established" limitations. <u>Id</u>. (quoting <u>Plummer</u>, 186 F.3d at 431).

Thus, in this case, the plaintiff's various RFC arguments often entail oblique attacks upon the ALJ's credibility determinations. To the extent that Vargas invites us to conduct our own independent credibility evaluations in the course of reviewing this RFC determination:

> [W]e are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL

288246, *9 (E.D. Pa. March 7, 2000) (quoting <u>Walters v. Comm'r of Social Sec</u>., 127 F.3d 525, 531 (6th Cir. 1997) ); <u>see also Casias v. Sec'y of Health & Human Servs</u>., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.").

<u>Black v. Berryhill</u>, No. 3:16-CV-1768, 2018 WL 4189661, at *5 (M.D. Pa. Apr. 13, 2018), <u>report and recommendation adopted,</u> No. 3:16-CV-1768, 2018 WL 4184303 (M.D. Pa. Aug. 31, 2018).

Applying the above standards, the Court is not persuaded by Vargas' arguments as to this issue. In the instant case, the ALJ concluded that Vargas had the following severe impairments: carpal tunnel syndrome, degenerative disc disease, synovitis of the knees, fibromyalgia, obesity, ADHD, mild cognitive impairment, major depressive disorder, and panic disorder. (Tr. 23). Considering Vargas' severe impairments, the ALJ fashioned the following RFC:

> [The] undersigned finds that [Vargas] has the [RFC] to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b). [Vargas] is limited to no more than occasional postural movements and no more than frequent handling and fingering bilaterally. Work is limited to simple and routine tasks involving only simple work-related decisions with few, if any, work place changes and only occasional interaction with supervisors, co-workers, and the public.

(Tr. 27). As correctly asserted by the Commissioner, the ALJ addressed Vargas' severe impairments by confining her to a limited range of light work and accounted for the symptoms caused by her physical and mental impairments by incorporating additional exertional and non-exertional limitations in the RFC. For example, to

39

address Vargas' physical impairments, the ALJ limited Vargas to "no more than occasional postural movements and no more than frequent handling and fingering bilaterally." (Id.). To address her mental impairments, the ALJ limited Vargas to "work limited to simple and routine tasks involving only simple work-related decisions with few, if any, work place changes and only occasional interaction with supervisors, co-workers, and the public." (Id.). These RFC limitations on the mental demands of the workplace were sufficient since it is clear "that limiting a claimant with moderate limitations in concentration, persistence, or pace to 'simple, routine tasks' is adequate when formulating the RFC. McDonald v. Astrue, 293 Fed. Appx 941, 946-47 (3d Cir. 2008)." Bonner v. Saul, No. 1:19-CV-1370, 2020 WL 4041052, at *16 (M.D. Pa. July 17, 2020).

While Vargas argues that the ALJ provides exertional and non-exertional limitations that are insufficient in addressing her physical and mental impairments, the claimant fails to show under the deferential standard of review which applies here that the ALJ erred in some material way. First, as correctly stated by the Commissioner, Vargas fails to provide any evidentiary support demonstrating the need for additional functional limitations in the RFC. Second, while Vargas argues that additional limitations should have been included in the RFC, she fails to indicate the additional exertional and non-exertional limitations that should have been

included in the RFC. Third, while Vargas contends that the ALJ offered no limitations concerning her pinched nerve in one of her legs, at no point in the record does Vargas identify any significant medical evidence that the ALJ failed to consider.

Lastly, the Court is not convinced with regard to Vargas' final claim of error, challenging the ALJ's evaluation of her fibromyalgia. Specifically, Vargas argues that the ALJ failed to properly assess her fibromyalgia pursuant to SSR 12-2p and POMS DI 24515.076. The Court, however, finds Vargas' contentions on this score, unavailing. At Step 2 of the sequential analysis, the ALJ determined that Vargas' fibromyalgia was a severe impairment. (Tr. 23). At Step 3, the ALJ considered Vargas' fibromyalgia under listing 14.09 in accordance with SSR 12-2p, which states:

> At [S]tep 3, we consider whether the [claimant's] impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 C.F.R. part 404 (appendix 1). [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At [S]tep 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 2012 WL 3104869 at *6. After concluding that Vargas' fibromyalgia failed to meet a listing impairment, the ALJ proceeded to Steps 4 and 5, confining

41

Vargas to a limited range of light work with additional limitations to account for her severe and nonsevere impairments, including her fibromyalgia. (Tr. 27). Thus, we find that the ALJ did not err in his evaluation of Vargas' fibromyalgia.

To reiterate, this Court is not now tasked with revisiting these factual issues, and we may not substitute our judgment of that of the ALJ. Instead, we are limited to determining whether the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Thus, finding that the ALJ provided adequate articulation for these determinations which were grounded in substantial evidence, and concluding that Vargas has failed to carry her burden in providing record support for additional limitations in the RFC, the Court finds no basis for disturbing the ALJ's determination on this matter.

> **ii.    The ALJ's Step Two Evaluation is Supported by Substantial Evidence and Any Alleged Error is Harmless on These Facts**

Next, Vargas argues that the ALJ erred in his Step 2 evaluation. (Doc. 11 p. 19-20). Specifically, Vargas contends that the ALJ erred in failing to find her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis severe impairments. (Doc. 11 p. 19-20). Vargas asserts:

> There are a number of physical impairments that were confirmed by [her] medical records, which were not properly considered by the ALJ in terms of [her] limitations, as follows: (1) [c]laimant has treated for cervical pain and headaches, which are chronic in nature, with

42

associated weakness in the left shoulder and weakness in the right elbow, (2) pain related to emptying issues with gastroparesis, and associated abdominal pain, and (3) pelvic pain and endometriosis, resulting in surgical interventions. (Admin. Tr. 299-304, 319, 355-57, 367-69, 373-78, 423, 873, 1037-43, 1069-71, 1107-09, an 1172. The ALJ did not consider any limitations from these conditions, despite the issues noted in her treatment records.

(Doc. 11 p. 19-20). Vargas contends that her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis should have been considered severe impairments, thus should have been factored into the RFC, because they have more than a minimal effect on her ability to perform basic work activities. (Doc. 11 p. 20).

In response, the Commissioner argues that because the ALJ is required to consider the combined effects of all of a claimant's impairments, severe and non-severe, throughout the subsequent steps of the process, the designation of a particular impairment as severe or nonsevere is not dispositive unless a decision is made at Step 2. (Doc. 12 p. 13). The Commissioner avers that as long as a claim is not denied at Step 2, it is not generally necessary for the ALJ to have specifically found any additional alleged impairment to be severe. (Id.). Thus, in the instant case, the ALJ did consider all of Vargas' severe and nonsevere impairments throughout the decision, including in his determination of the RFC. (Doc. 12 p. 14). The Commissioner further contends that Vargas did not identify any specific physical or mental functional limitations caused by her nonsevere gastric polyps, endometriosis,

43

gastroparesis, or cervical pain with headaches that were documented in the record and not already accounted for in the RFC. (Id.).

At Step 2 of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality' which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities". McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. McCrea, 370 F.3d at 360; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146.

Here, we find that substantial evidence supports the ALJ's Step 2 evaluation. At Step 2, the ALJ considered all of Vargas' alleged impairments, including her asthma, depression, anxiety, fibromyalgia, IBS, obese class 1, scoliosis, panic attacks, carpal tunnel, high blood pressure, and ADD. (Tr. 179). The ALJ concluded, however, that during the relevant period, Vargas had the following severe

impairments: carpal tunnel syndrome, degenerative disc disease, synovitis of the knees, fibromyalgia, obesity, ADHD, mild cognitive impairment, major depressive disorder, and panic disorder. (Tr. 23). Vargas argues that the ALJ erred by failing to find her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis severe impairments, thus failed to account for these impairments in crafting the RFC. (Doc. 11 p. 19-20). However, contrary to her assertions, substantial evidence supports the ALJ's Step 2 evaluation. At the outset, Vargas never alleged in her disability report that her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis limited her ability to work, nor did she testify that any of the above impairments limited her ability to perform work activities.( Tr. 38-56, 179). Further, at no point in the record does Vargas identify any medical evidence that the ALJ failed to consider concerning her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis. Additionally, Vargas neglects to provide any evidentiary support demonstrating the need for additional functional limitations in the RFC concerning these conditions.

Lastly, even assuming that the ALJ erred in finding her gastric polyps, endometriosis, cervical pain with headaches, and gastroparesis nonsevere

45

impairments, any error is harmless.[2] Read as a whole and in a commonsense fashion, it is clear that the ALJ's decision considered these impairments throughout the sequential evaluation process and incorporated them into the RFC, restricting Vargas to a limited range of light work. For example, at Step 2, the ALJ specifically stated that Vargas' medical records indicated that she had medically determinable impairments of gastric polyps, GERD, endometriosis, pruritis, contact dermatitis, a right foot plantar wart, gastroparesis, food allergies, and allergic rhinitis. (Tr.23). However, Vargas' medical records did not indicate that the she experienced symptoms related to any of these impairments for 12 consecutive months. (Id.). Further, the ALJ explained that Vargas did not allege that she experienced any persistent symptoms related to any of these impairments during her testimony. (Id.). Moreover, the ALJ explained that the entirety of Vargas' medical records did not establish that she was persistently assessed with abnormal clinical examination findings that were attributed to any of these impairments by an acceptable medical source. (Id.). Given such evidence, the ALJ concluded that Vargas' impairments of gastric polyps, GERD, endometriosis, pruritis, contact dermatitis, a right foot plantar

---

[2] To the extent that the ALJ failed to consider Vargas' cervical pain with headaches, as mentioned supra, Vargas never alleged that this condition limited her ability to work, nor did she testify that this condition limited her ability to perform work activities. (Tr. 179).

wart, gastroparesis, food allergies, and allergic rhinitis were nonsevere impairments. (Id.).

The ALJ, then proceeded to consider these nonsevere impairments throughout the sequential evaluation process and incorporated them into his RFC of light work, which placed very limited exertional demands upon Vargas. As correctly asserted by the Commissioner, this continued consideration of Vargas' nonsevere impairments is fatal to this Step 2 argument, as it is well-settled that: "[E]ven if an ALJ erroneously determines at Step 2 that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." Naomi Rodriguez v. Berryhill, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases).

In this case, contrary to Vargas' contentions, the ALJ considered her nonsevere impairments at Step 2 of the sequential evaluation process, and continued to consider them throughout this process in crafting an RFC of light work for the plaintiff. Thus, we find no basis for disturbing the ALJ's determination as to this issue.

### iii.    The ALJ Properly Weighed the Evidence of Record

Vargas' last claim of error, challenges the ALJ's consideration of the opinion evidence. (Doc. 11 p. 21). Specifically, Vargas argues that the ALJ erred in assigning "great" weight to State agency consultant, Dr. Brown. (Doc. 11 p. 23). Vargas argues that Dr. Brown rendered his decision without the bulk of the medical evidence and that many of the records concerning Vargas' symptom allegations were submitted after Dr. Brown's findings. (Doc. 11 p. 23). Vargas further contends that the ALJ erred in assigning "little" weight to the opinion of Dr. Small and only "some" weight to Dr. Baker's opinion. (Doc. 11 p. 24). Vargas argues:

> The ALJ . . . assigned the opinions of the State Agency Psychological Consultant "little" weight, and then only assigned "some" weight to the other opinion of record to set forth limitations for mental health, a Consultative Exam [P]hysician, Dr. Baker, except of course for the marked limitation noted by Dr. Baker, which would have rendered [Vargas] disabled per SSR 81-15, SSR 96-8p and POMS DI 25020.010. (Admin Tr. 30-31 and 296). In assigning "little" weight to the marked limitation from Dr. Baker, the ALJ refers to the treating source opinion from Dr. Dall, which the ALJ does not evaluate or rate in any fashion, but appears to rely upon in disagreeing with the marked limitation from Dr. Barker, without giving note, weight or reference to other limitations noted by Dr. Dall which would have rendered [Vargas] incapable of sustaining employment.

(Doc. 11 p. 23-24). Vargas further contends:

> [Dr. Baker] noted that [Vargas] has marked limitation with regards to her ability to respond appropriately [to] normal changes in a routine work setting. (Admin. Tr. 296). Per SSR 81-15, SSR 96-8p and POMS DI 25020.010, this limitation would render [Vargas] incapable of

> sustaining employment. As it relates to this finding, and the lack of
> consistency of opinions of record as opposed to the opinions of the State
> Agency Medical and Psychological Consultants, if the ALJ felt that
> [there] were inconsistencies, and in light of the fact that the limitations
> in [Vargas'] medical records are more consistent with the opinion of
> Dr. Baker, as it related to marked limitations, and other limitations set
> forth in the treatment records, the ALJ had an obligation to further
> develop the record in this matter, either through obtaining a Medical
> expert, posting [i]nterrogatories to treating sources, or additional
> Consultative Exams, per Hallex i-2-6-56, 20 C.F.R. 404.1512(b) and
> 416.912(b).

(Doc. 11 p. 24-25).

In response, the Commissioner argues that there is no merit to Vargas' argument that the ALJ improperly evaluated the medical opinion of Dr. Baker. (Doc. 12 p. 15). While the Commissioner did not specifically address Vargas' contentions that the ALJ failed to properly weigh the opinions of Dr. Brown and Dr. Small, the Commissioner generally argued that the ALJ properly weighed this medical opinion evidence and specifically asserted that the ALJ reasonably assigned only partial weight to Dr. Baker's opinion based upon the evidence of record. (Id.). Therefore, the ALJ's decision complied with the dictates of the law, and the decision is supported by substantial evidence. (Doc. 12 p. 15-18).

It is clear beyond peradventure that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. Chandler, 667 F.3d at 361. The ALJ is charged with a duty to

evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. Plummer, 186 F.3d at 429.

Contrary to Vargas' contentions, the Court finds that substantial evidence supports the ALJ's consideration of the opinion evidence of record. In this case, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies regarding Vargas' abilities and limitations. Reconciling the discordant and conflicting threads of evidence, the ALJ assigned "great" weight to the opinion of Dr. Brown, "little" weight to the opinion of Dr. Small, and "some" weight to the opinion of Dr. Baker. (Tr. 31). In this case, the ALJ considered the opinion of Dr. Brown and assigned his opinion "great" weight. (Id.). The ALJ reasoned that Dr. Brown's opinion matched Vargas' medical records on a longitudinal basis, including clinical examination findings of a normal gait, normal balance, normal coordination, 5/5 strength in the upper and lower extremities, a negative straight leg raising test, no tenderness of the hands or wrists, satisfactory

50

range of motion of the shoulders, hips, knees, ankles, elbows, and wrists, good grip strength, normal tandem walking, normal muscle bulk and tone, and a negative Romberg test. (Id.). For example, the ALJ explained that in December 2017, a neurological examination was mostly normal, including normal gait, normal bulk and tone in all extremities, and 5/5 motor exam throughout. (Id.). The ALJ further explained that this exam noted moderate limitation to the lumbar range of motion, which corresponded to the moderate limitations opined by Dr. Brown. (Id.). Additionally, in October 2017, electrodiagnostic testing revealed only mild radiculopathy supporting the moderate limitations opined by Dr. Brown. (Id.). Further, an orthopedic examination noted that Vargas' knee impairment was mild and that Vargas "seems to be functioning fairly well." (Id.). Given this clinical evidence which corroborated Dr. Brown's opinion, we find that substantial evidence supported the ALJ decision to assign "great" weight to Dr. Brown's opinion.

The ALJ considered Dr. Small's opinion and assigned it "little" weight, finding that the moderate limitations opined by Dr. Small did not correspond with Vargas' mental health records. (Id.). For example, the ALJ explained that the mental status examinations performed by treating psychiatrist, Dr. Anne Dall from July 2016 to March 2018, revealed mostly normal findings supporting no more than moderate limitations. (Id.). The ALJ further explained that Vargas' mental health

51

treatment has been conservative without higher level of care, such as inpatient or day hospital. (Id.). Thus, in light of this countervailing clinical evidence, the ALJ did not err in assigning Dr. Small's opinion "little" weight.

The ALJ further considered the opinion of Dr. Baker and assigned it "some" weight. (Id.). The ALJ explained that in most areas Dr. Baker opined limitations supporting the moderate limitations of the RFC, which he assigned "some" weight. (Id.). The ALJ, however, assigned "little" weight to Dr. Baker's opinion of marked limitation in the area of "respond appropriately to usual work situations and to changes in a routine work setting."  (Id.). The ALJ explained that such a marked limitation did not correspond to the mental status examinations performed by the treating psychiatrist, Dr. Anne Dall from July 2016 to March 2018, which revealed mostly normal findings supporting no more than moderate limitations. (Id.). The ALJ also explained that Vargas' conservative mental health treatment, which did not require a higher level of care, such as inpatient or day hospital, did not support a marked limitation in this area. (Id.). Once again, the disparity between the clinical mental health record and the doctor's opinion justified the ALJ decision to assign only  "some" weight to the opinion of Dr. Baker.

Simply put, the ALJ discounted some aspects of the opinions of doctors Brown, Small, and Baker in light of these contrasting medical opinions and findings.

The ALJ's decision also rested upon an assessment of other record evidence, including Bonner's own somewhat contradictory statements concerning the severity of her impairments. For example, Vargas testified that her back gets swollen and prevents her from walking. (Tr. 28). Vargas testified that she experiences pain in her legs, such that her legs will get stuck and she walks with a limp. (Id.). With regard to her mental health conditions, Vargas testified that she experiences very strong panic attacks and while experiencing a panic attack her heart accelerates, she gets a headache, becomes dizzy, losses her eyesight, and her blood pressure goes up. (Id.). Vargas further reported that her mental and physical impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, see, hear, and climb stairs. (Tr. 197). Additionally, Vargas reported that her impairments affect her ability to retain information, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others. (Id.). There were some internal inconsistencies in Vargas' report, however, as she also described her daily activities in terms that were not wholly disabling. For example, Vargas reported that she watches television, prepares meals four days a week, performs light household chores, performs most of her personal needs, walks her daughter's puppy, drives a car, shops in stores, pays bills, handles a checking account, socializes with others, and can leave the house alone. (Tr. 236-46).

53

Finally Vargas argues that the ALJ erred in assigning "great" weight to Dr. Brown's opinion. (Doc. 11 p. 23-24). Vargas contends that Dr. Brown's opinion was rendered without the bulk of the medical evidence and that many of the records concerning Vargas' symptom allegations were submitted after Dr. Brown's finding. (Doc. 11 p. 23). However, Vargas' contentions on this score, are unavailing. The law is clear,

> There is always some time lapse between the State agency consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.

Chandler, 667 F.3d at 361 (quoting SSR 96-6p (July 2, 1996)).[3] Thus, the Court is not persuaded by Vargas' argument as to this issue.

In sum, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies in Vargas' abilities and limitations. In reconciling the discordant and conflicting threads of this evidence, the ALJ assigned "great" weight to the opinion of Dr. Brown, "little" weight to the opinion of Dr. Small, and "some" weight to the opinion of Dr. Baker. It is the right and responsibility of the ALJ to

---

[3] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017.

make such assessments and we find that substantial evidence supported the ALJ's decision. It appears that Vargas is requesting that this Court re-weigh the evidence. This we may not do. See, Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))). Because we cannot re-weigh the evidence, we find the ALJ has not erred in weighing the opinion evidence of record.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

IV.    **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Submitted this 23d day of July, 2020